```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNIÓN DE TRONQUISTAS DE PUERTO RICO, LOCAL 901,<br><br>**Plaintiff,**<br><br>         v.<br><br>UNITED PARCEL SERVICES (UPS),<br><br>**Defendant.** | **Civil No.** 22-1090 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Plaintiff Unión de Tronquistas de Puerto Rico, Local 901 ("the Union") seeks to vacate an arbitration award that affirmed the termination of one of its members. (Docket No. 11-1.) After removing this case to this Court, defendant United Parcel Services ("UPS") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Docket No. 15.) The Union opposes the motion. (Docket No. 21.) For the reasons set forth below, UPS's motion for summary judgment is **GRANTED**, and the Court **AFFIRMS** the arbitration award.

Civil No. 17-2117 (FAB)                                                                 2

## I. Background[1]

The Court derives the following facts from UPS's statement of uncontested material facts and the attached exhibits. (Docket No. 15-2.) The Union did not submit an opposing statement of material facts and thus UPS's facts supported with record citation are deemed admitted. See Loc. Rule 56(c), (e).

The Union and UPS are parties to a Collective Bargaining Agreement ("CBA"). (Docket No. 15-2 at p. 1; Docket No. 15-3.) The CBA states that an employee may be discharged without prior warning for, among other things, initiating attacks or aggressions against fellow employees. (Docket No. 15-2 at p. 2; Docket No. 15-3 at p. 11.) UPS also has two relevant policies: a "Crisis Management, Workplace Violence Prevention and Domestic Violence Prevention Policy," which prohibits violent conduct including threatening conduct, and a "Professional Conduct and Anti-Harassment Policy" which requires employees to treat each other with courtesy and respect. (Docket No. 15-2 at pp. 3—4; Docket Nos. 15-4, 15-5, 15-6, 15-7.) Article 16 of the CBA states that cases submitted to arbitration are final and binding on the parties and employees involved. (Docket No. 15-3 at p. 14.)

---

[1] The Court has construed these facts in the light most favorable to the Union in granting UPS's motion for summary judgment. See McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

José Sevillano ("Sevillano") was already employed by UPS in 2014 when he became the subject of complaints by other union members that he was creating a hostile work environment. (Docket No. 15-2 at p. 4—5; Docket No. 15-9.) UPS investigated the complaints and determined that there was no basis for disciplinary action but reviewed with Sevillano the company policies regarding professional conduct and harassment. (Docket No. 15-2 at 4—6; Docket Nos. 15-13, 15-4, 15-5, 15-6, 15-7.)

About five years later, on July 19, 2019, Félix Calderón, a fellow driver for UPS, drafted an affidavit stating that he feared Sevillano after Sevillano made a remark about a fatal workplace shooting at a UPS in Alabama, saying "to kill my boss, I do not have to be in UPS, as I have rifles with sight I can hit him from afar." (Docket No. 15-15; Docket No. 15-2 at p. 6.) Calderón also wrote that Sevillano made false accusations against other employees, went into co-workers' vehicles to look for errors, and reported his co—workers on a 1—800 line operated by UPS. Id. Another union employee, Ricardo Morales, signed his own affidavit the same day stating that he had known Sevillano since 1992 while working together at UPS, and that Sevillano created a hostile work environment that made Morales fear for the safety of the employees. (Docket No. 15-16; Docket No. 15-2 at p. 7.) Sevillano allegedly falsely accused his co—workers of certain infractions and reported

them to the supervisors, yelled at a part-time supervisor, and told Morales he had firearms.  Id.  Four additional UPS employees wrote affidavits and submitted them to the company on the same day, stating that they, too, felt intimidated by Sevillano and feared for their safety due to his hostile attitude towards them, his remarks that he had firearms, and his comment about using a firearm from afar on a supervisor.  (Docket No. 15-2 at p. 7; Docket Nos. 15-24, 15-25, 15-26, 15-27.)

UPS investigated the complaints after reviewing the affidavits and determined that Sevillano should be terminated. (Docket No. 15-2 at p. 7; Docket No. 15-18.)  UPS fired Sevillano on August 2, 2019.  (Docket No. 15-2 at p. 8; Docket No. 15-18.)

On September 9, 2019, the Union filed a grievance on behalf of Sevillano to challenge his termination (A-20-2351 at the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources).  (Docket No. 15-2 at p. 8; Docket No. 15-19.)  During the arbitration, UPS submitted as evidence all the affidavits it had received regarding Sevillano's behavior, and presented the live testimony of two of the affiants, Calderón and Morales.  (Docket No. 15-2 at pp. 8—9; Docket No. 15-17.) Calderón testified about the remarks Sevillano had made about hypothetically shooting a supervisor, that he knew that Sevillano had firearms, and about Sevillano's hostile attitude towards his

Civil No. 22-1090 (FAB)                                                    5
_____

UPS co-workers, including that he went into their vans to look for errors to report to the supervisors, and that he ridiculed those who had had road accidents. (Docket No. 15-2 at p. 10-11; Docket No. 15-17 at pp. 9-14.) Morales testified that he had supervised Sevillano in the past, that he believed Sevillano had anger issues and created a hostile work environment, that Sevillano complained about his co-workers and made negative comments about UPS, and that Morales had met with Sevillano several times to discuss his anger issues. (Docket No. 15-2 at p. 11; Docket No. 15-17 at pp. 24-32.) UPS also presented the testimony of Luis Olivero, a supervisor in the office, who testified that he was part of the 2019 investigation into the employees' complaints about Sevillano, which determined that Sevillano had violated the company's policies and that he should be terminated in accord with section 15 of the CBA. (Docket No. 15-2 at pp. 10-12; Docket No. 15-17 at pp. 73-84.) Olivero presented the affidavits UPS had received, and detailed the prior investigation in 2014, in which Sevillano was given the workplace policies as reminders of proper professional conduct. (Docket No. 15-2 at pp. 12-13; Docket No. 15-17 at pp. 73-80.) The Union objected to the affidavits as inadmissible hearsay, but the arbitrator stated he preferred to receive them based on precedent regarding hearsay evidence. (Docket No. 15-17 at pp. 76-79.)

The arbitrator issued an award confirming UPS's decision to terminate Sevillano, explaining that in considering both the testimony and the affidavits, UPS exercised its responsibility to maintain a safe workplace and applied the proper discipline. (Docket No. 15-2 at pp. 14—15; Docket No. 15-8 at pp. 14—18.) The Union filed a petition to vacate the award in the Court of First Instance of Puerto Rico, San Juan Division. (Docket No. 1 at p. 2; Docket No. 11-1.) The Union argued in its petition that the award was contrary to public policy and violated the Union's right to due process, because the award was based entirely on hearsay to which the Union had objected. (Docket No. 11-1 at p. 2.)

UPS removed the action to this Court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Docket No. 1 at p. 3.) UPS then moved for summary judgment, arguing that the Union had not alleged anything that would entitle it to vacate the award, because the award was explicitly based on not only hearsay evidence but also on the testimony of the witnesses, that the rules of evidence do not strictly apply in arbitration, that the arbitrator acted correctly to admit hearsay evidence, and that the arbitrator's determination was reasonable and based on the evidence presented at the hearing. (Docket No. 15.) The Union opposed the motion, reiterating that an arbitrator cannot base their award exclusively on hearsay and that the employer never

presented testimony that Sevillano had violated any "dishonesty policy." (Docket No. 21 at p. 7—8.) UPS replied to the Union's opposition, disputing the Union's characterization of the employer's burden of proof at the arbitration hearing. (Docket No. 26.)

**II. Standard of Review**

    **A.    Summary Judgement**

Federal Rule of Civil Procedure 56 provides that the Court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex

Civil No. 22-1090 (FAB)                                                 8

Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion.  Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).  "When the nonmovant bears the burden of proof on a particular issue, she [or he] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question."  Tobin, 775 F.3d at 450—51.  Courts draw all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations.  McGrath, 757 F.3d at 25 (internal citations omitted).

**B.   Judicial Review of Arbitration Awards**

"It is a firm principle of federal labor law that where parties agree to submit a dispute to binding arbitration, absent unusual circumstances, they are bound by the outcome of said proceedings."  Posadas de Puerto Rico Assocs., Inc. v. Asociación

de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987).  "[I]t is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept," and for this reason, "[a] court's review of an arbitrator's decision is highly deferential."  Hawayek v. A.T. Cross Co., 221 F. Supp. 2d 254, 256 (D.P.R. 2002) (Casellas, J.) (quoting United Paperworkers Int'l. Union v. Misco, 484 U.S. 29, 37 (1987)).

An arbitrator's decision, however, is not entitled to *carte blanche* approval.  Larocque v. R.W.F., Inc., 8 F.3d 95, 96 (1st Cir. 1993) (citations omitted).  Section 10 of the Federal Arbitration Act "offers very limited reasons to vacate an arbitration award. The grounds include only the following:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

>(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 9 (1st Cir. 2019) (quoting 9 U.S.C. § 10(a)).  The First Circuit Court of Appeals has also recognized "the common law doctrine of manifest disregard of the law," which requires a challenger to "show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." [2] Mt. Valley Prop., Inc. v. Applied Risk Services, Inc., 863 F.3d 90, 94—95 (1st Cir. 2017).  In disputes between employers and labor unions, an arbitration award is only legitimate if "it draws its essence from the collective bargaining agreement."  United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

---

[2] The First Circuit Court of Appeals has noted that the validity of this ground for vacating an award is in question following the Supreme Court's decision in Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008), but has not explicitly limited the doctrine and continues to apply it.  See Mt. Valley Prop, 863 F.3d at 94–95; Ebbe v. Concorde Inv. Services, LLC, 953 F.3d 172, 176 (1st Cir. 2020); Torres-Burgos v. Crowley Liner Serv., Inc., 995 F.3d 1026, 1027 (1st Cir. 2021).

**III. Discussion**

The Union argues in its opposition to the motion for summary judgment and in its original petition that the arbitration award should be vacated because the arbitrator based his decision entirely on hearsay, which violated the Union's right to due process. (Docket No. 21 at p. 1; Docket No. 11-1 at p. 2.) UPS disputes this argument as factually incorrect and legally insufficient. (Docket No. 15 at pp. 2—3.)

As a principal matter, the arbitrator wrote clearly that he did not reach his decision based on the affidavits alone, but also considered the testimony of two of the witnesses. See Docket No. 15-8 at p. 13—14 ("In reference to that part of the hearsay objected by the Union, under the premise it was hearsay, the case did not rest entirely in those documents there challenged. Two of the witnesses that provided affidavits testified in court and upheld the accusations of hostile environment . . . ."). The arbitrator noted that these witnesses testified to the central issues of the dismissal: the claimant's treatment of his colleagues, his comment about using a weapon against UPS staff, and the seriousness of this threat knowing that he did possess firearms. Id. The Court thus has no need to determine whether an arbitration award based entirely on hearsay violates due process such that it can be vacated, as the case before it does not present

Civil No. 22-1090 (FAB)                                                12

this situation. Cf. Tobin, 775 F.3d at 450—51 ("When the nonmovant bears the burden of proof on a particular issue, she [or he] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question."); McGrath, 757 F.3d at 25.

Furthermore, and conversely to what the Union argues, an arbitrator has an obligation to consider pertinent and material evidence, as the arbitrator in this case explained in the award. See Docket 15-8 at p. 12 ("This norm . . . is more liberal in the arbitration proceedings, in which flexibility and informality must prevail so that all that is pertinent to the controversy has access to the arbitrator.") (citing JRT v. Autoridad de Comunicaciones, 110 D.P.R. 884 (1981)); see also Hoteles Condado Beach, La Concha and Conv. Ctr. v. Unión De Tronquistas Loc. 901, 763 F.2d 34, 39—40 (1st Cir. 1985) ("The arbitrator must then determine 'the truth respecting material matters in controversy, as he believes it to be, based upon a full and fair consideration of the entire evidence and after he has accorded each witness and each piece of documentary evidence, the weight, if any, to which he honestly believes it to be entitled.'") (quoting F. Elkouri & E. Elkouri, How Arbitration Works 273-74 (3d ed. 1973)).

The Union has not alleged any other viable basis for vacating the arbitration award. See Dialysis Access Ctr, 932 F.3d at 9;

Civil No. 22-1090 (FAB)                                               13

Mt. Valley Prop, 863 F.3d at 94–95.  Accordingly, the Court **GRANTS** UPS's motion for summary judgment (Docket No. 15) and **AFFIRMS** the arbitration award.  See Unión de Tronquistas de Puerto Rico, Loc. 901 v. United Parcel Serv., Inc., 149 F. Supp. 3d 246, 252–53 (D.P.R. 2016) (Gelpí, J.); 9 U.S.C.A. § 9.

**IV. Conclusion**

For the reasons set forth above, UPS's motion for summary judgment (Docket No. 15) is **GRANTED**.  Accordingly, the arbitration award is **AFFIRMED**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 23, 2023.

                                          s/ Francisco A. Besosa
                                          FRANCISCO A. BESOSA
                                          SENIOR UNITED STATES DISTRICT JUDGE